IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Donovan Murray, | ) Civil Action No.: 8:14-cv-04506-MGL-JDA |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Warden Stevenson, | ) **OF MAGISTRATE JUDGE** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 15.]  Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on November 21, 2014.[1] [Doc. 1.]  On April 1, 2015, Respondent filed a motion for summary judgment and a return and memorandum.  [Docs. 15, 16.]  On the same day, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion.  [Doc. 17.]  Petitioner filed a response in opposition on September 14, 2015. [Doc. 31.]

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on November 21, 2014. [Doc. 1-3 at 1 (envelope marked as received by prison mailroom on November 21, 2014).]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted.

## BACKGROUND

Petitioner is incarcerated in the Broad River Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Charleston County.  [Doc. 1 at 1.]  Petitioner was indicted in March 2008 for possession with intent to distribute cocaine within proximity of a school; possession with intent to distribute cocaine, third offense; possession of a weapon during the commission of a violent crime; possession with intent to distribute cocaine base within proximity of a school; and trafficking in cocaine base, third offense.  [App. 982–87[2]; Doc. 16 at 1–2.[3]]  On July 7–9, 2008, represented by Daniel Prenner[4] ("Prenner"), Petitioner proceeded to trial.  [App. 1–805.]  At the conclusion of the trial, the jury returned a verdict of guilty on the charges of possession with intent to distribute cocaine within proximity of a school and possession with intent to distribute cocaine, third offense; Petitioner was acquitted of the other charges.  [App. 766–70.]  Petitioner was sentenced to 10 years for the possession with intent to distribute cocaine within proximity of a school charge; 15 years for the

[2]The Appendix can be found at Docket Entry Numbers 16-1 through 16-6, and the Supplemental Appendix can be found at Docket Entry Number 16-7.

[3] Respondent has provided only copies of the indictments for which Petitioner was ultimately found guilty—possession with intent to distribute cocaine within proximity of a school and possession with intent to distribute cocaine, third offense.  [App. 982–987.]  As explained, infra, Petitioner was acquitted of the other charges.  [Doc. 16 at 2.]

[4] In his memorandum accompanying the motion for summary judgment, Respondent identifies trial counsel as Daniel Presser.  [Doc. 16 at 2.]  This appears to be a scrivener's error.

possession with intent to distribute cocaine, third offense, charge; and five years of Petitioner's probation was revoked, all to run concurrent. [App. 789, 804; Docs. 1 at 1; 16 at 2.]

**Direct Appeal**

Petitioner appealed his conviction. M. Celia Robinson of the South Carolina Commission on Indigent Defense filed a brief on Petitioner's behalf, dated September 21, 2010, in the South Carolina Court of Appeals, raising the following issues:

> 1. Did the trial judge err in allowing the State to submit evidence of appellant's statements which were made in response to police interrogation but without appellant's first being warned under <u>Miranda</u>?
>
> 2. Did the trial judge err in admitting in evidence testimony regarding appellant's possession of prescription drugs without a prescription where such evidence was admitted in violation of Rules 403 and 404(b), SCRE and where the admission of this evidence served to unfairly prejudice appellant and to deprive him of a fair trial?

[Doc. 16-8 at 4.] The South Carolina Court of Appeals affirmed the decision of the lower court in an unpublished opinion filed September 20, 2011. [Doc, 16-10.] Remittitur was issued on October 19, 2011. [Doc. 16-11.]

**PCR Application**

On November 8, 2011, Petitioner filed a pro se application for post-conviction relief ("PCR"), in which he alleged he was being held in custody unlawfully based on the following grounds:

> (a)    Ineffective Assistance of Counsel
>
> (b)    Structural Ineffective Assistance of Counsel

3

(c)    Prosecutorial Misconduct

[App. 810.] As supporting facts for his grounds, Petitioner attached a document to his PCR

Application, quoted substantially verbatim:

> A) Ineffective Assistance of Counsel is due to the fact that counsel failed to conduct a reasonable investigation of my case before the Plaintiff went to trial, and counsel failed to be an advocate for the Plaintiff by agreeing to a stipulation that prejudiced the Plaintiff. Counsel failed to explain the details of the stipulation. Counsel stipulated to chain of custody needing no further proof when the chain of custody was broken. Counsel helped the Prosecution enter tainted evidence. There is a reasonable probability that but for counsel's errors, the result of the trial could have been different due to the fact that it is undisputed that if there was a motion to su[press] the cocaine Aff[idavit] and the cocaine as evidence. The Plaintiff would not have been convicted of cocaine. Plaintiff would ask that sentence be vacated and evide[nce] su[pressed] with new Trial granted. Also on Direct Appeal Plaintiff was appointed counsel and counsel was Ineffective by not raising Plain Error issues and New trial in interest of justice. Plaintiff wanted to add more arguments to his counsel's final brief and could not get it amended cause counsel said there was no need to amend it. Plaintiff would ask that issues raised Pro se be Amended and able to be acknowledged, and sentence vacated with New Trial Granted.
>
> B) Structural Ineffective Assistance of Counsel is due to the fact that counse[l] assisting the Prosecution in covering up evidence, in a credibility drug case, that crack was found in the p[re]scription pill bottle, that co-defendant claimed at trial, which would have completely undermined the Prosecutions case and witnesses' credibility, who was the only witness who allege[d] to see Plaintiff with drugs, constitute Structural Ineffective Assistance of Counsel where prejudice is presumed Plaintiff ask that sentence be vacated an new trial granted.
>
> C) Prosecutorial Misconduct is due to the fact that the State's witness committed perjury and knew State knew about it and did not correct it for the jury so the jury could assess the facts of the case. Prosecutor knowingly introduced and relied on false evidence. Prosecutor knew that Plaintiff's co-defendant

4

was in possession of crack but allowed the jury to go under the false impression that co-defendant was only claiming cocaine, and not the crack that was also found in a p[re]scription pill bottle that had Plaintiff's co-defendant's name on it, which co-defendant claimed at trial[.]   Plaintiff ask that sentence be vacated and new trial granted.

D) Brady Violation is due to the fact that exculpatory and impeachment evidence was with held from the Plaintiff.  In the Plaintiff's Rule 5 and Rule 6, it is documented that within a p[re]scription pill bottle that was found by N. Charleston Police department there was 1.2 grams of powder cocaine in the p[re]scription pill bottle.  At trial the Plaintiff's co-defendant claimed what was in the p[re]scription pill bottle but was onl[y] referring to claiming the cocaine.  Which if this was known before trial evidence would have been s[upre]ssed.  Also co-defendant could have been impeached.

E) Due Process Violation is due to the fact that the Plaintiff life was at stake.  The Plaintiff wanted to know the facts of the case.  The state withheld exculpatory evidence and the actual facts of the case before the Plaintiff.  The Plaintiff had a liberty interest to receive more procedure then the Plaintiff got from the state.  The Plaintiff's proper defense was not properly established because of Prosecutorial Misconduct and Brady Violation.  If Plaintiff knew about the exculpatory evidence or impeaching evidence, Plaintiff would have been acquitted of all charges.  The Plaintiff ask that sentence be vacated and new trial granted.

F) Misrepresentation of case is due to the fact that the State and Prosecutor knew that cocaine base crack and powder cocaine was in a p[re]scription pill bottle.  During the opening arguments the Prosecutor is saying the Plaintiff's co-defendant is only taking ownership of a little over a gram of pow[der] cocaine within a little p[re]scription pill bottle, but it is undisputed that there was cocaine base crack and powder cocaine found in the p[re]scription pill bottle.   This is an continuous event throughout the Plaintiff's trial.  The Plaintiff ask that Jury be given the actual facts of the case so they can better assess this credibility case, sentence be vacated, and new trial granted.

G) Improper Bolstering of witness is due to the fact that at Plaintiff's trial, the State only had one eye witness who alleged

that Plaintiff was in possession of gun and drugs. In a credibility case Prosecution has strict guidelines to follow. In cases involving sexual abuse, which usually turn on the credibilities of defendant and prosecuting witness, strict adherence to the rules of evidence an appropriate prosecutorial conduct is required to ensure a fair trial. It goes undisputed that Plaintiff's case is a credibility case. During opening arguments, Prosecutor bolstered witness occupation. During witness testimony Prosecutor bolstered witness occupation. During closing arguments Prosecutor again bolstered the witness credibility. The Plaintiff ask that the bolstering of a witness in a credibility case be paid attention too and sentence vacated and new trial granted.

H) Improper Admission of Evidence is due to the fact that testimony regarding Plaintiff's possession of prescription drugs with out a prescription where such evidence was admitted in violation of Rules 403 and 404(b). Plaintiff ask that testimony be looked at in its [e]nt[ire]ty cause it did prejudice the Plaintiff, sentence be vacated, and new trial granted.

I) Structural Error is due to the fact that trial court abused it's discretion constituting structural error, by giving the jury a copy of the court's instruction. Plaintiff ask that the sentence be vacated and new trial granted.

J) Plain Error is due to that fact that incorrect jury instruction on mere presence charge, where it is stated . . . . Two or more persons may have joint possession of a drug. The Plaintiff's case was not a conspiracy case or more than one defendant on trial. Two or more persons may have joint possession of a drug should not have been said in jury instructions. Improper admission of tainted evidence constituting prosecutorial misconduct, Prosecutor entered in a aff[idavit] and cocaine as evidence when aff[idavit] and cocaine was tain[ted] in bad faith. The court allowed the evidence to be presented to the Jury under the false impression that the evidence was correct and admissible. Plaintiff ask that sentence be vacated and new trial granted with tainted evidence su[press]ed.

K) Chain of Custody issue is due to the fact that the chain of custody was broken in several places in the Plaintiff's case. During Plaintiff's arrest 12/12/07 the N. Charleston Police department committed police collusion to produce false and inaccurate police reports, and rule 6 forms. The officer who

6

handled the drugs at the scene of the crime weighed .5 of cocaine base with 9.4 of cocaine in a attempt to hide the .5 of cocaine base in the cocaine. Aff[i]davit. Officer Jourdan was the officer who took the drugs from the scene and did not testify at my trial to what she found or transported to the Police department. The N. Charleston Police department drug analyst Alex Teachey did not write down the description of the items Alex Teachey received from Officer Jourdan and did not document what was transported to sled drug analyst Jill Clark of Columbia. Plaintiff ask that drugs are s[uppre]ssed, sentence vacated, and new trial granted.

L) New Discovered Evidence is due to the fact that after the Plaintiff's trial, it was later discovered that the police committed collusion to hide .5 of cocaine base crack in an Aff[i]davit for powder cocaine. The Plaintiff was intentionally misled by the state. The Plaintiff requested for a Motion of Discovery and in the rule 5, rule 6, and Officer report it is documented that 1.2 grams of powder cocaine in a p[re]scription pill bottle owned by Plaintiff's co-defendant. The 1.2 grams of powder cocaine was combined with 8.7 grams of powder cocaine that was also found. At trial Jill Clark sled drug analyst for the state, testified that the 1.2 grams inside of the p[re]scription pill bottle contain cocaine base crack and powder cocaine. Plaintiff ask that there be an evidentiary hearing on the cocaine evidence and Aff[i]davit, sentence vacated, and new trial granted.

M) New trial in interest of justice is due to the fact that in U.S v. Morales. Defendant was entitled to new trial in prosecution for possession of firearm by defendant who had four previous convictions for violent felonies. Police officer's account that defendant fired semiautomatic pistol and tossed it into sinks in tavern was improbable since chamber was empty and clip and pistol were in different sinks; and it was possible that tavern owner or employee slipped gun and clip into sinks beneath bar. When complete record in case involving very large, mandatory, minimum penalty does not permit confident conclusion that defendant is guilty beyond reasonable doubt, district judge is obliged to grant motion for new trial. In Plaintiff case Plaintiff was a visitor at a hotel owned by Edward S. Ickes. Ickes showed the officers where drugs were located in his nightstand after police interrogation. Ickes then wrote a statement against the Plaintiff saying that Plaintiff placed the drugs in his nightstand. Plaintiff was then arrested and there was no finger prints t[a]ken from the nightstand, no finger prints from the

bags the drugs were found in. No pictures were taken, no investigation was done to substantiate Ickes's claim. Plaintiff was facing a mandatory sentence 15-30 once found guilty. It was possible that Ickes could have placed the drugs in his nightstand. Plaintiff ask that this be looked at as an extreme case and Jury's verdict be questioned in the in interest of Justice, sentence vacated, and new trial granted.

N) Improper testimony is due to the fact that in State v. Jackson, 1876 case, where it is stated that, a co-defendant can not testify against another co-defendant unless being first acquitted or nolle prosequi before testifying. Plaintiff was arrested along with Edward S. Ickes on 12/12/07. Both were arrested as co-defendants and was charged together. Plaintiff pled not guilty and went to trial. At trial Plaintiff's co-defendant was a state witness and testified against Plaintiff without being acquitted or nolle prosequi until after Plaintiff was found guilty. Plaintiff ask that testimony of co-defendant be s[up]pressed, his sentence vacated, and new trial granted.

O) Miranda violation is due to the fact that the Plaintiff's statements which were made in response to police interrogation but without Plaintiff first being warned under Miranda because prescription drugs were found and arrest could be made and Plaintiff could not leave the area once drugs were found. In Laboy, Courts have identified several factors that could lead a reasonable innocent person to believe that he is not free to disregard the police officer, including: the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged detention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; inter[roga]tion in a non public place or a small, enclosed space; and absence of other members of the public. Plaintiff ask that statements made in response to police interrogation not be used against Plaintiff in the court of law because Plaintiff was not notified of the potential threat. Plaintiff ask that sentence be vacated, and new trial granted.

P) Improper admission of testimony regarding possession of prescription drugs is due to the fact that evidence was admitted in violation of rules 403 and 404(b). Plaintiff ask that testimony

> be s[upress]ed because of prejudice is presumed, sentence be
> vacated, and new trial granted.

[App. 815–19 (citations omitted).]  The State filed a return, dated May 1, 2012.  [App. 820–25.]

A hearing was held on January 22, 2013, at which Petitioner was represented by Mark Peper ("Peper").  [App. 827–937.]  The PCR court filed an order denying and dismissing the PCR application with prejudice on February 28, 2013.  [App. 958–974.] Peper filed a motion to reconsider on Petitioner's behalf dated March 1, 2013, [App. 975–77], which was denied on April 16, 2013 [App. 981].

A notice of appeal was timely filed.  Carmen V. Ganjehsani ("Ganjehsani") of the South Carolina Commission on Indigent Defense filed on Petitioner's behalf a *Johnson*[5] petition for writ of certiorari, dated October 15, 2012, in the Supreme Court of South Carolina asserting the following as the sole issue presented:

> Whether the PCR court erred in finding trial counsel effective
> in stipulating to the chain of custody of the drug evidence
> where the evidence technician of the North Charleston Police
> Department utterly failed in her report to identify what evidence
> she received from Officer Patricia Jourdan where Officer
> Jourdan was unavailable to testify at trial as to what evidence
> she delivered to the evidence technician?

[Doc. 16-12 at 3.]  At the same time she filed the *Johnson* petition, Ganjehsani submitted a petition to be relieved as counsel.  [*Id.* at 17.]  Petitioner filed a pro se petition for writ of certiorari, dated May 19, 2014, asserting the following issues, quoted substantially verbatim:

---

[5] A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief; a brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim. *See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (S.C. 1988)

> [1.]  The PCR court erred in finding trial counsel effective in stipulating to the chain of custody for drug evidence where the chain of custody was broken egregiously upon absent identity of each individual that handled the evidence, the identity of the evidence itself, and the condition of the evidence upon receipt and delivery therefrom rendering all of drugs inadmissible[.]
>
> [2.]  The PCR court erred in finding prosecutorial misconduct was not an issue for PCR therefore refusing to allow Petitioner to raise all his issues to the PCR Court which had merit and denied Petitioner his full bite at the apple.

[Doc. 16-13.]  The Supreme Court of South Carolina transferred the case to the South Carolina Court of Appeals; the Court of Appeals denied the petition and granted Ganjehsani's petition to withdraw on October 8, 2014 [Doc. 16-14] and remitted the matter to the lower court on October 24, 2014 [Doc. 16-15].

**Petition for Writ of Habeas Corpus**

As previously stated, Petitioner filed the Petition on November 21, 2014.  [Doc. 1.] In his Petition, Petitioner raises the following ground for relief, quoted substantially verbatim:

> **Ground One**:     Trial counsel was ineffective in stipulating to chain of custody when the chain was so egregiously broken; in exchange for something in return from the state that was not given by the state as agreed upon.
>
> *Supporting Facts*:     On December 12, 2007, Petitioner was arrested for drugs found in a motel room.  The drugs were confiscated by Patricia Jordan, an officer from the North Charleston Police Department. Patricia Jordan's chain of custody form stated she delivered the evidence to the evidence room of the North Charleston county P.D. but failed to state "who" she delivered the evidence to. Alexander Teachey, an evidence technician for North Charleston P.D. testified she retrieved Patricia Jordan's evidence from the evidence

"locker." Patricia Jordan did not put in her chain of custody form that she placed the evidence in the evidence "locker." Patricia Jordan's form stated evidence "room." [Plaintiff's supporting facts continue on an attached page.]

Patricia Jordan did not testify at trial to clarify this missing link of information. The next problem in the chain of custody was that in Alex Teachey's chain of custody form , there wasn't any description at all of the substance or container delivered by officer Patricia Jordan to Alex Teachey. Also Alex Teachey's form additionally failed to document whom Alex Teachy turned the evidence over to. Alex Teachey testified at trial that she handed the evidence over to a S.L.E.D. evidence technician but not "who" the S.L.E.D. evidence technician was. Therefore Alex Teachey's chain of custody form was incomplete. Trial testimony showed that somehow the evidence was received forty-eight days later by Jill Clerk of S.L.E.D. Jill Clerk testified that Amy Stevens of S.L.E.D. delivered the evidence to her on January 25, 2008. There was no chain of custody form for Amy Stevens showing who she received the evidence from . . . when she received the evidence . . . or the condition of the evidence. Amy Stevens also did not testify to clarify the chain of custody of the evidence. Lieutenant Johnson, an officer from the scene of the incident testified as an expert that he discovered in doing a field analysis test that the substances in the baggies "were powdery cocaine. The states key witness, Edward Ickes, testified the baggie in the pill bottle contained powder cocaine. Yet, after the chain of custody is broken in several different ways, crack cocaine is found to be in the mixture of cocaine in the pill bottle. Since Patricia Jordan was not going to be at trial to testify, trial counsel made an agreement with the state to stipulate to the chain of custody if the state would allow the defen[s]e to enter the report of Patricia Jordan as evidence for the jury. So . . . the stipulation was made but this was not a valid trial strategy

> because the report of officer Jordan was never admitted into evidence. Petitioner did not receive anything of value for trial counsel agreement with the state to stipulate to the sufficiency of the chain of custody. Trial counsel should have challenged the chain of custody because the evidence was inadmissible and should have been suppressed. Trial counsel was ineffective in his trial strategy and failure to properly challenge the chain of custody in violation of Sixth Amendment.

[Doc. 1.]

As stated, on April 1, 2015, Respondent filed a motion for summary judgment. [Doc. 15.] On September 14, 2015, Petitioner filed a response in opposition. [Doc. 31.] Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

### Liberal Construction of Pro Se Petition

Petitioner brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition still may be subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411,

417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude

13

granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,*

14

134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief

15

to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)      (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)      (I) there is an absence of available State corrective process; or
> >
> > > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the

16

exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the Supreme Court of South Carolina. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[6] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

---

[6] In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim. *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the Supreme Court of South Carolina is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the Supreme Court of South Carolina] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the Supreme Court of South Carolina's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

### Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). The United States Supreme

18

Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

19

U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However,

if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this actual innocence standard, the petitioner's case must be truly extraordinary. *Carrier*, 477 U.S. at 496.

## DISCUSSION

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A

21

> state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts
> that are materially indistinguishable from a decision of this
> Court and nevertheless arrives at a result different from our
> precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of

Supreme Court precedent when the decision "correctly identifies the governing legal rule

but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407–08; *see*

*also Richter*, 131 S.Ct. at 786 ("Under § 2254(d), a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of this

Court. . . . It bears repeating that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to

or an unreasonable application of Supreme Court precedent unless applicable Supreme

Court precedent exists; without applicable Supreme Court precedent, there is no habeas

relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart*

*v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597

(7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

Petitioner argues Prenner was ineffective for stipulating to the chain of custody.

[Doc. 1 at 5–6.]  The Court concludes Petitioner is not entitled to federal habeas corpus

relief based upon this allegation.

When evaluating a habeas petition based on a claim of ineffective assistance of

counsel, assuming the state court applied the correct legal standard—the Supreme Court's

holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is

whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[7] *Richter*, 131 S.Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas"). Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

Here, the PCR court addressed Prenner's performance under the standard set forth in *Strickland*. [App. 966.] The PCR court found,

---

[7] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687. To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 692. The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

[t]rial counsel was not ineffective for failing to investigate the chain of custody. This Court also finds that trial counsel was not ineffective for stipulating to the chain of custody prior to trial. This Court finds that trial counsel gave credible testimony that he discussed the chain of custody with the Applicant prior to trial and made a strategic decision to stipulate to the chain of custody. Where counsel articulates a valid strategic reason for his action or inaction, counsel's performance should not be found ineffective. Roseboro v. State, 317 S.C. 292, 454 S.E.2d 312 (1996). Courts must be wary of second guessing counsel's trial tactics; and where counsel articulates a valid reason for employing such strategy, such conduct is not ineffective assistance of counsel. Whitehead v. State, 308 S.C. 119, 417 S.E.2d 529 (1992).

Trial counsel testified that he agreed to stipulate to the chain of custody in exchange for the admission into evidence of a police report created by Officer Jordan. Counsel testified that Officer Jordan was not present at trial and the police report without the officer's testimony to rehabilitate the report showed that the State's case lacked evidence. Counsel testified further that had he thought objecting to the chain of custody would have resulted in suppression, he would have done so. This Court finds that counsel articulated a valid trial strategy for stipulating to the chain of custody. This Court finds further that any attempt to object to the chain of custody would likely have been futile. This Court finds the Applicant has failed to carry his burden of proving that counsel's performance was deficient and the Applicant failed to show that counsel's performance resulted in prejudice.

[*Id.* at 967.] The PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. The PCR court

concluded that Petitioner failed to establish that Prenner's representation fell below an objectively reasonable standard or any resulting prejudice. [App. 967, 974.]

The record supports the PCR court's determination. At the PCR hearing, Prenner testified that he stipulated to the chain of custody as a strategic consideration because the prosecution allowed Officer Jourdan's police report to come into evidence in exchange. [App. 898.] Prenner stated that he believed that a police report would normally be excluded as hearsay when the officer was not present to testify and that he thought the police report was helpful to his case. [*Id.*] Prenner stated that he discussed this decision with Petitioner.[8] [App. 908.] Further, Prenner testified that he would never have negotiated had he thought that the chain of custody was a winnable issue. [App. 917.] Thus, the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

---

[8] At his PCR hearing, Petitioner stated that Prenner did not explain the chain of custody issue to him and he would not have agreed to the stipulation if he had understood it. [App. 847–48.] However, the PCR court determined that Petitioner's testimony was not credible and found Prenner's testimony was credible and that he adequately conferred with Petitioner. [App. 966.] The PCR court's credibility determination is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) (for a federal habeas court to overturn a state court's credibility judgment, the state court's error must be stark and clear); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them").

defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Internal citation omitted)).   Accordingly, Petitioner is not entitled to habeas corpus relief on this ground.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

 IT IS SO RECOMMENDED.

<u>S/Jacquelyn D. Austin</u>
United States Magistrate Judge

January 11, 2016
Greenville, South Carolina